# Appendix A. pp. 3-24

Memorandum with Addition Support
And Argument In Support Herein with
Points And Authorities.

# Appendix A. pp. 3-24

Memorandum with Addition Support
And Argument In Support Herein with
Points And Authorities.

# **TABLE OF AUTHORITIES**

## **UNITED STATES CONSTITUTION**

Sixth Amendment……………......………………………….18, 20-23

Fourteenth Amendment……………..………………………….18

## **CASES**

### UNITED STATES SUPREME COURT

*Apprendi v. New Jersey* (2000) 530 U.S. 466………..….18-19, 23

*Blakely v. Washington* (2004) 542 U.S. 296…………...…...18-24

*Brady v. Maryland* (1963) 373 U.S. 83…………….……...7, 15

*Chapman v. California* (1967) 386 U.S. 18……………………15

*Cunningham v. California* (2007) ___U.S.___ [127 S.Ct.
  856]………………………………………………….3, 18, 22-24

*Strickland v. Washington* (1984) 466 U.S. 668……………......13

*United States v. Bagley* (1985) 473 U.S. 667……………….....15

*United States v. Booker* (2005) 543 U.S. 220…………….....20-21

### CALIFORNIA SUPREME COURT

*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74…11

*In re Harris* (1993) 5 Cal.4th 813………………………………14

*People v. Black* (July 19, 2007) __ Cal.4th __ [S126182]….3, 17

*People v. Black* (2005) 35 Cal.4th 1238………………………..21

*People v. Fosselman* (1983) 33 Cal.3d 572……………………13

*People v. Mooc* (2001) 26 Cal.4th 1216………………………15

*Pitchess v. Superior Court* (1974) 11 Cal.3d 531……..……..3, 7

### CALIFORNIA COURTS OF APPEAL

*City of San Jose v. Superior Court* (1998) 67 Cal.App.4th
  1135……………………………………………………….11

*Fletcher v. Superior Court* (2002)
  100 Cal.App.4th 386………………………………9, 11, 13, 15

*Hurd v. Superior Court* (2006) 144 Cal.App.4th 1100………..14

*People v. Andrade* (2000) 79 Cal.App.4th 651……………….13

## OHIO SUPREME COURT

*State v. Foster* (2005) 845 N.E.2d 470.............................23

## UNITED STATES CODE

18 U.S.C. § 3553.............................................21
18 U.S.C. § 3742.............................................21

## CALIFORNIA STATUTES

### EVIDENCE CODE

§ 210.......................................................11
§ 1043..............................................3, 7, 10-12, 17
§ 1045..................................................10-11
§ 1047......................................................7
§ 1054.9...................................................14

### PENAL CODE

§ 67....................................................3-4, 18
§ 654.......................................................4
§ 669......................................................23
§ 1170.12..................................................24
§ 1170.16..................................................24
§ 1202.4....................................................4
§ 1202.45...................................................4
§ 1203......................................................4

### RULES OF COURT

Rule 4.425..............................................18, 23
Rule 8.368..................................................1
Rule 8.5000.................................................2

investigation) would have led to a different result" – to the *Pitchess* motion. The Court's published opinion will lead trial courts to apply the wrong standard for disclosure of *Pitchess* records in violation of Evidence Code section 1043. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

In the second issue, the Court of Appeal held that *Cunningham v. California* (2007) __ U.S. __ [127 S.Ct. 856] (*Cunningham*) does not apply to California's consecutive sentencing scheme. Petitioner acknowledges that this Court has decided the issue adversely to him (*People v. Black* (July 19, 2007) __ Cal.4[th] ___ [S126182]). Petitioner's argument will be briefly reiterated here to preserve the question for federal review.

## STATEMENT OF CASE

An amended information filed in the Orange County Superior Court on October 3, 2005, charged Tuan Phuong Nguyen (petitioner) with the following offenses:

Count one: On November 16, 2004, bribing an executive officer (§ 67), subject: Detective David Lima (Lima).

Count two: On November 16, 2004, bribing an executive officer (§ 67), subject: Detective Roger Tolosa (Tolosa).

Count three: On December 7, 2004, bribing an executive officer (§ 67), subject: Lima.

Count four: On December 7, 2004, bribing an executive officer (§ 67), subject: Tolosa.

Count five: On January 25, 2005, bribing an executive officer (§ 67), subject: Lima.

Count six: On January 25, 2005, bribing an executive officer (§ 67), subject: Tolosa.

(1 C.T. pp. 99-100.)

The jury convicted petitioner of all six charges. (1 C.T. pp. 213-220, 229-230, 1 R.T. pp. 178-181.)

The court denied probation under section 1203, subdivision (e)(4) and sentenced petitioner to the mid-term of three years on count one, and one-third of the mid-term, one year, for each of counts three and five, to be served consecutively. The court stayed sentence on counts two, four, and six pursuant to section 654. The court also imposed a restitution fine of $1,000 under section 1202.4, subdivision (b) and imposed and suspended a parole revocation fine of $1,000 under section 1202.45. Petitioner's sentence totaled five years. (2 C.T. pp. 430-431, 1 R.T. pp. 223-224.)

## STATEMENT OF FACTS

Santa Ana police detectives Lima and Tolosa were investigating ongoing prostitution at petitioner's tanning salon. Lima became involved in the investigation in 2001. (1 R.T. p. 64.) Until November of 2004, nobody at the salon offered him any money or anything of value. (1 R.T. pp. 21-22, 64.) For ten months prior to November 2004, he regularly visited the salon and was involved in numerous arrests for prostitution or loitering with intent to commit prostitution. (1 R.T. p. 15.) Every time Lima and Tolosa

4

showed up or made an arrest at the salon, petitioner would arrive within ten minutes and ask them to "give him a break." (1 R.T. pp. 15-16.)

**Counts 1-2:** On November 16, 2004, Lima and Tolosa arrested one Tiffany Mai at the salon. Petitioner gave Lima and Tolosa two envelopes, each containing $500 in hundred-dollar bills, and told Lima, "Next time it will be better." (1 R.T. pp. 23-26, 91.)

Lima told petitioner that Sergeant Ibarra was present, and that Mai would have to go to jail, but that Lima would get her out with just a citation. Petitioner responded, "That's fine, thank you." (1 R.T. p. 26.) Lima did as he had promised. (1 R.T. pp. 83-84.)

**Counts 3-4:** On December 7, 2004, Lima and Tolosa returned to the salon and again found prostitution activity occurring. (1 R.T. p. 27-28.) Petitioner again gave them two envelopes with $500 cash in each. (1 R.T. p. 30-31, 2 C.T. pp. 440-442.) Lima told petitioner he would give him a break this time. (1 R.T. pp. 82-85, 2 C.T. pp. 442, 448, 450.)

**Counts 5-6:** On January 25, 2005, petitioner gave Lima and Tolosa each an envelope containing $1,500. (1 R.T. pp. 38-39, 49, 2 C.T. pp. 460-461.) Petitioner told them that he wanted them to stop his competition. (1 R.T. p. 40, 2 C.T. pp. 465-469.) Tolosa asked, "What do you want us to do, shoot them?" Petitioner responded, "No, I just want you to scare them." (1 R.T. p. 40, 2 C.T. pp. 468-470.)

Detective Tolosa booked all of the money that he and Lima received into evidence. (1 R.T. pp. 90-91.)

**ARGUMENT**

**I.**

**THIS COURT SHOULD GRANT REVIEW TO DETERMINE WHETHER THE COURT OF APPEAL ERRED IN ELEVATING THE STANDARD OF REVIEW OF A POST-TRIAL *PITCHESS* MOTION FROM "MATERIALITY" TO "PREJUDICE."**

**A.     Introduction**

Petitioner was convicted of six counts of bribing an executive officer.  Detectives Lima and Tolosa received money from petitioner on three occasions.  On the second and third occasions, the officers audiotaped the transaction.  (2 C.T. pp. 440-450, 460-470.)

**The Defense At Trial:**  In counts one and two, the case against petitioner consisted of the testimony of Detective Lima.  (1 R.T. pp. 23-26.)  Similarly, counts three and four (December 7, 2004) were founded upon Lima's testimony that petitioner was involved in the transaction via cell phone, because petitioner was not present and his voice did not appear on the audiotape.  (1 R.T. pp. 27-32; 1 C.T. pp. 438-452.)  Counts five and six were founded upon both Lima's testimony and the audiotaped transaction with petitioner.  (1 R.T. pp. 38-40; 1 C.T. pp. 453-472.)  However, there was no direct mention of money paid by petitioner on the tape.  The proof of bribery depended heavily upon the context of the conversation provided by Lima's testimony.  Detective Tolosa testified only that he was present on each occasion and received cash that he booked into evidence. (1 R.T. pp. 90-91.)

6

Petitioner's trial counsel, Frank Barilla, attempted to set up an entrapment defense. He attacked the credibility of the officers and suggested that they were misrepresenting the events that actually occurred. (1 R.T. pp. 64-79.) Barilla intimated at closing argument that petitioner was entrapped by corrupt police who demanded bribes in order to allow his business to continue. (1 R.T. pp. 160-167.) However, Barilla never conducted any investigation, nor filed any written discovery motions prior to trial, and thus could not impeach these officers with any prior misconduct that might have eroded their credibility. (1 C.T. pp. 111, 126; 2 C.T. p. 255.) In particular, Barilla did not file a motion for discovery of the personnel records of Detectives Lima and Tolosa pursuant to Evidence Code sections 1043-1047, *Pitchess v. Superior Court* (*supra*, 11 Cal.3d 531), and *Brady v. Maryland* ((1963) 373 U.S. 83.)

**The Post-Trial *Pitchess* Motion:** Following his conviction, petitioner acquired new counsel, Kristin Erickson. Erickson filed a *Pitchess* motion in order to uncover information that would support an argument in a motion for new trial that trial counsel Barilla was ineffective. (2 C.T. pp. 238-259.) The trial court found good cause and examined the personnel records of Lima and Tolosa in camera for evidence of solicitation of bribes, complaints of false arrests, allegations of false police reports, and perjury. (1 R.T. pp. 188-197.) The trial court then denied counsel's motion for disclosure of the information with these words:

> There is no discoverable material contained in Officer Tolosa's file. As to Officer Lima, there is nothing

> contained in that file that would lead this court to
> believe that Mr. Nguyen has not received a fair trial.

(1 R.T. p. 198.)

**The Motion For New Trial:** Petitioner then filed a motion for new trial on the grounds of ineffective assistance of counsel and denial of due process based upon the trial court's failure to disclose information found in Lima's file. (2 C.T. pp. 358-381.) The motion alleged in part that the trial court had improperly denied discovery of material and exculpatory evidence contained in Lima's personnel file. Petitioner argued that the trial court erred by using the wrong standard, assessing the evidence in Lima's file for its persuasive force rather than its materiality only. (2 C.T. pp. 358-367; 1 R.T. pp. 199-200.) The trial court denied the motion as follows:

> I did find that there was material [contained in Lima's personnel file] that would have been disclosed prior to trial, but looking back in retrospect after trial, it's the court's conclusion that that evidence was of such little probative value that number one, it probably would not have been admitted to begin with, but second of all, it would not have made a difference in the outcome of this trial. It would not have raised a reasonable doubt concerning that particular officer's testimony.

(1 R.T. p. 203.) In denying the new trial motion, the trial court made clear that in determining whether or not to disclose material evidence, he assessed it under the standard for ruling on a motion for new trial on the grounds of ineffective assistance of counsel. Petitioner was required to show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would

have been different, before the trial court would disclose the
evidence in Lima's file. (1 R.T. pp. 202-203.)

**The Appeal:** Petitioner argued that the trial court erred in
requiring petitioner to demonstrate prejudice in the context of a
discovery motion, even though made post-trial. "The trial court thus
created a Catch-22" (*Fletcher v. Superior Court* (2002) 100
Cal.App.4[th] 386, 392) for petitioner, because he could not
demonstrate the likely effect of undisclosed evidence on the trial's
outcome. Most significantly, the court's ruling deprived petitioner
of the opportunity to investigate the complaints against Lima, as trial
counsel would have been able to do if he *had* brought a timely
*Pitchess* motion. Thus petitioner was denied the chance to
determine if there was other evidence that would have demonstrated
sufficient misconduct on the part of Detective Lima to justify a new
trial.

In its published opinion, the Court of Appeal correctly noted
that to initiate discovery via a post-trial *Pitchess* motion, the
defendant must demonstrate the materiality of the information to the
*pending* litigation, rather to the preceding trial. (Slip Op., pp. 4-5.)
The "pending litigation" was petitioner's motion for new trial on the
grounds of ineffective assistance of counsel based upon former
counsel's failure to make a *Pitchess* motion or otherwise investigate
an entrapment defense. To prevail on his motion for new trial,
petitioner was required to show a "reasonable probability" that
competent performance, i.e., a full investigation and presentation of
evidence of Lima's misconduct, would have led to a different result
– that is, petitioner had to show that trial counsel's omissions were

9

prejudicial. (Slip Op. pp. 5-6.) To this point, the court's reasoning was sound.

The Court of Appeal then erred, however, in holding that to be "material" to the motion for new trial, the records must be sufficient to prevail on that motion. The Court of Appeal thus applied the standard for weighing a motion for new trial on grounds of ineffective assistance of counsel – "a reasonable probability that competent performance (in conducting an investigation) would have led to a different result" – to the *Pitchess* motion.

> After defendant was convicted, the "pending litigation" to which the requested records had to be material was his new trial motion claiming ineffective assistance. [Citations omitted.] To prevail on this claim, defendant would have to show a "reasonable probability" that competent performance would have led to a different result. [Citation omitted.] Thus, the proper standard for reviewing defendant's posttrial *Pitchess* motion was whether a reasonable probability existed that disclosure of the requested records would have led to a different result at trial.

(Slip Op. pp. 5-6.) The Court of Appeal's *nonsequitur* improperly elevated the materiality standard to one of prejudice.

**B.    The Court Of Appeal Erred In Requiring The Records Requested In Petitioner's *Pitchess* Motion To Be Determinative Of The Outcome Of The Motion For New Trial.**

Evidence Code sections 1043 and 1045 establish a two-step procedure for discovery of police officer personnel records. First, Evidence Code section 1043 requires the movant to file a written motion for discovery, with notice to the government agency which

has the custody of the records sought.  The motion must include "a description of the type of records or information sought" supported by "affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(3). The second step is an *in camera* examination by the trial court of the potentially relevant records to determine if they have any relevance to the issue.  (*City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1143.)

The discovery procedure established by Evidence Code sections 1043 and 1045 applies not merely to a pretrial *Pitchess* motion in a criminal case, but to "any case in which discovery or disclosure is sought of peace or custodial officer personnel records." (Evid. Code, § 1043, subd. (a).)  "Materiality" or "relevance" remains the touchstone, whatever the circumstances or nature of the case.   "The only general standard for discovery of privileged information in an officer's personnel file has always been its potential relevance as determined by a judge." (*Fletcher v. Superior Court, supra,* 100 Cal.App.4th at p. 394)  It is a simple and relatively low standard, lacking the complexity of a question of admissibility.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-86.)  It means simply "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

In this case, the trial court found good cause, examined the records, and determined that some of them would have been disclosed to the defense had a *Pitchess* motion been brought pretrial. (1 R.T. p. 203.) In short, the trial court determined that the evidence was material to the defense at trial – that it had some tendency in reason to discredit Officer Lima or to help establish an entrapment defense. The trial court refused disclosure, however, on the grounds that the records he examined would not have changed the result of the trial.

Any evidence that the trial court determined was relevant to the defense prior to trial must also be relevant to a motion for new trial based upon trial counsel's failure to seek out such evidence. If the evidence was material to the defense, then it is likely that trial counsel had a duty to take reasonable steps to discover it, particularly through such obvious means as a *Pitchess* motion in a case where counsel raised an entrapment defense. Under no circumstance does Evidence Code section 1043 demand that the records sought be more than "material"; it certainly does not require them to be outcome-determinative.

Further, the purpose of the post-trial *Pitchess* motion was to allow petitioner to investigate and determine if there was evidence sufficient to undermine confidence in the verdict that competent counsel could have discovered by exercising due diligence. The quest for such evidence goes well beyond what may be in the police personnel files. The premise of allowing *Pitchess* discovery has always been "to permit the petitioner to discover facts which will *lead to admissible evidence,* and not only evidence which is itself

admissible." (*Fletcher v. Superior Court, supra,* 100 Cal.App.4th at p. 404 [emphasis added].) Competent trial counsel in this case would have investigated and followed up on *Pitchess* evidence disclosed by the court (which usually consists only of the names, addresses, and telephone numbers of complainants) to discover other evidence, if any, of misconduct sufficient to impeach Lima or to establish an entrapment defense. Thus, it was necessary for counsel post-trial to perform the same investigation to determine what other evidence existed that competent counsel would have discovered. The application of a prejudice standard to the decision of whether or not to disclose the records in the first place clearly frustrates that purpose. The only purpose served by the decision not to disclose *Pitchess* evidence on the grounds that the jury would not have found it persuasive is to cut off discovery before it has begun. (*Ibid.*)

Once all relevant evidence that can be found through a *Pitchess* motion and follow-up investigation has been discovered, the trial court should *then* assess the sum total of the new evidence to determine if there is a reasonable probability of a different result at a hearing on a motion for new trial. (*People v. Andrade* (2000) 79 Cal.App.4th 651, 659-660 [A new trial may be granted where... defendant shows that counsel's deficient performance resulted in prejudice to defendant]; *People v. Fosselman* (1983) 33 Cal.3d 572, 582-583; *Strickland v. Washington* (1984) 466 U.S. 668, 684, 686.) To make that determination prior to the hearing serves only to deprive the movant of due process, and the trial court itself of the ability to make a fair and informed decision.

*Hurd v. Superior Court* ((2006 144 Cal.App.4[th] 1100) (*Hurd*), cited by the Court of Appeal in its decision, does not suggest that the standard for *Pitchess* discovery should be elevated post-trial. *Hurd* merely holds that the requested records must be material to the pending litigation, in that case, a habeas petition:

> In the instant case, transplanting this trial-discovery standard into the habeas corpus context imposed by [Evidence Code] section 1054.9, we conclude that petitioner cannot show that the peace officer records he seeks are material. The reason: our opinion in his direct appeal renders the discovery immaterial to his proposed habeas corpus claims, and the proposed claims themselves are not cognizable on habeas corpus because they are simply a restatement of claims raised and rejected on appeal.

(*Id.* at p. 1112.) In the absence of some strong justification, no issue that was raised and rejected on appeal can be renewed in a state petition for writ of habeas corpus. (*In re Harris* (1993) 5 Cal.4[th] 813.) "Thus, as a matter of law, the discovery cannot be material to his expected habeas corpus proceeding." (*Hurd v. Superior Court, supra,* 144 Cal.App.4[th] at p. 1115.) The *Hurd* court disposed of their petitioner's *Pitchess* motion on very different grounds from those asserted by the Court of Appeal in this case, and certainly never suggested that a standard other than materiality should apply.

## C.    The Error Of Law Resulted In A Prejudicial Deprivation Of Due Process.

Both the trial court and the Court of Appeal denied petitioner the opportunity and the ability to argue that the undisclosed evidence was admissible and might have made a difference to the jury. More importantly, the error deprived petitioner the opportunity to

determine if there was other evidence that would have demonstrated sufficient misconduct and/or acts of moral turpitude on the part of Detective Lima to justify a new trial. The trial court should have disclosed the material evidence in the file to the defense in order that counsel might investigate, follow up any leads provided, and brought the motion for a new trial based upon the evidence relevant to impeach Lima and/or to the defense of entrapment discovered in the file and in the follow-up investigation. Only then could the trial court have properly assessed the prejudice resulting from trial counsel's neglect of the case.

The trial court's ruling created a Catch-22 for petitioner: he could not learn about any former misconduct by Officer Lima that competent counsel would have sought, unless he could prove that the undisclosed information would have created a reasonable doubt in the jury's minds. (See *Fletcher v. Superior Court, supra,* 100 Cal.App.4th at p. 392.) It also deprived him of the opportunity to pursue other admissible evidence, as he would have been able to do if competent counsel had brought a *Pitchess* motion prior to trial. Denial of due process is a federal constitutional error (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225; *United States v. Bagley* (1985) 473 U.S. 667, 674-678 [105 S.Ct. 3375, 87 L.Ed.2d 481]; *Brady v. Maryland, supra,* 373 U.S. at p. 87, *Chapman v. California* (1967) 386 U.S. 18, 24.)

Sufficient evidence of misconduct by Lima, discovered and presented by effective counsel, would very likely have changed the outcome of petitioner's trial. Lima was the primary witness against petitioner. The prosecutor's case depended wholly upon his

testimony in counts one and two. There was no audiotape to back him up. Dectective Tolosa did not corroborate Lima's testimony as to the nature of the transactions as bribes, but merely testified that he was present and received money. (1 R.T. pp. 90-91.) Since petitioner did not deny that the transactions took place, but rather argued that he was shaken down by corrupt police, Tolosa's testimony could not refute any reasonable doubt that evidence of Lima's misconduct might raise.

In counts three and four, Lima's testimony was the only evidence that petitioner was involved at all, since petitioner was not present and his voice does not appear on the audiotape. (See 2 C.T. pp. 438-450.) Similarly, in counts five and six, only Lima provided any testimony to prove that the transactions were bribes, for the audiotapes do not provide sufficient context, and again, Tolosa testified only to receiving money. (See 2 C.T. pp. 460-470, 1 R.T. pp. 90-91.)

Lima's credibility was thus of utmost importance to the prosecutor's case. Any evidence of prior acts of moral turpitude, particularly corruption, blackmail, extortion, soliciting bribes, perjury, or filing false police reports, could have supported and proved an entrapment defense, thereby raising a reasonable doubt of petitioner's guilt. In a case where counsel planned to raise entrapment, a *Pitchess* motion should have been filed. The trial court's error of law in elevating the standard for discovery at a post-trial *Pitchess* motion deprived petitioner of the opportunity and ability to prove the likely prejudice resulted from trial counsel's failure to investigate. The Court of Appeal compounded the error by

elevating the standard for post-trial *Pitchess* discovery from "materiality" to "prejudice" in a published opinion, in violation of Evidence Code section 1043, subdivision (b)(3).

## II.

**THE COURT OF APPEAL ERRED IN FINDING NO *CUNNINGHAM* VIOLATION WHERE THE TRIAL COURT IMPOSED CONSECUTIVE TERMS FOR ALL COUNTS BASED ON FACTORS IN AGGRAVATION NOT FOUND BY THE JURY BEYOND A REASONABLE DOUBT.**

**A.    Introduction.**

Petitioner acknowledges that this Court has decided this issue adversely to his position. (*People v. Black, supra,* __ Cal.4[th] ___ [S126182]). Argument is presented here to preserve the question for federal review.

The trial court sentenced petitioner to the mid-term of three years on count one, and one-third of the mid-term for each of counts three and five, one year each, run consecutively. (C.T. pp. 430-431, R.T. pp. 1062-1063.) In imposing consecutive sentences, the trial court stated that:

> The crime charged in count one was committed on November 16, 2004. The crime charged in count three on December 7, 2004. And in count five on January 25, 2005. Although the ultimate goals [sic] of the crimes charged was to keep the police from shutting down his house of ill remuneration [sic], the defendant committed separate acts of bribery on separate occasions so as to preclude the idea that the crimes were committed during a single period of adamant [sic] behavior.

> Therefore, the sentence for counts three and five will be run consecutive to count one, one-third the mid term violating PC section 67 is one year, which hereby is imposed on counts three and five.

(1 R.T. p. 223.)

The court apparently relied upon Rule 4.425(a)(3), which provides as follows:

> Criteria affecting the decision to impose consecutive rather than concurrent sentences include:
> (a) Facts relating to the crimes, including whether or not:
> …(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

The trial violated petitioner's Sixth and Fourteenth Amendment rights by imposing consecutive sentences without a jury finding, beyond a reasonable doubt, that this factor were true. The sentence is impermissible because petitioner was deprived of his right to a jury trial as to this factor. (*Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*); *Cunningham v. California, supra,* __ U.S. __ [127 S.Ct. 856] (*Cunningham*)).

## B.    <u>Summary Of Recent Case Law</u>

Petitioner is confidant that this Court is very familiar with *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny. Petitioner will therefore briefly summarize the case law leading to the United States Supreme Court's decision in

*Cunningham*, that the right to jury trial applies to factors used to elevate a sentence to the upper term in California.

In *Blakely v. Washington* the United States Supreme Court held that, where state law establishes a presumptive sentence for a particular offense and authorizes a greater term only if certain additional facts are found beyond those inherent in the plea or jury verdict, the Sixth and Fourteenth Amendments entitle the defendant to a jury's determination of the additional facts by proof beyond a reasonable doubt. (*Blakely, supra*, 542 U.S. at p. 305.) Defendant Blakely was subject to an absolute maximum of 10 years. However, the standard range for his offense was 49 to 53 months. Washington law provided that a court could impose a sentence greater than the standard range (but still within the 10-year maximum) only if it found substantial and compelling reasons justifying an exceptional sentence. The trial court imposed an exceptional sentence of 90 months -- 37 months above the standard range -- based upon the judge's finding that Blakely acted with deliberate cruelty, one of the enumerated aggravating factors. (*Blakely, supra*, 542 U.S. at p. 300.)

The Supreme Court held that the trial court's use of that aggravating factor violated the rule explained in *Apprendi* entitling a defendant to jury determination of any fact that exposed a defendant to greater punishment than the maximum otherwise allowable for the underlying offense. (*Blakely, supra*, 542 U.S. at p. 303.) The *Blakely* majority rejected the state's assertion that the relevant maximum was the 10-year cap for the offense involved in the case. Instead, the majority treated the top end of the standard range (53

19

months) as the relevant statutory maximum because that was the greatest sentence Blakely could receive based solely on the facts admitted by his plea. (*Blakely, supra,* 542 U.S. at p. 303, emphasis in original].)   Thus, in essence, the only factors the judge is permitted to use to increase a sentence are those presented to the jury for its consideration and decision.  If the jury does not find unanimously and beyond a reasonable doubt that those factors are true, the judge may not use them to increase a sentence.

In *United States v. Booker* (2005) 543 U.S. 220 (*Booker*), the defendant was sentenced under the Federal Sentencing Guidelines. Facts found by the jury permitted a sentence range of 210 to 262 months of imprisonment, which the trial court could not exceed without finding additional facts.  (*Id.* at pp. 233-234.)  The judge found by a preponderance of the evidence that the defendant Booker possessed crack cocaine in excess of the amount determined by the jury's verdict, a finding which boosted him into a higher sentencing range under the Guidelines. (*Id.* at 227.)

A five-Member majority of the United States Supreme Court held that Booker's sentence was impermissible under the Sixth Amendment, finding "no distinction of constitutional significance" between the Federal Sentencing Guidelines and the sentencing laws of Washington found invalid in *Blakely.* (*Booker, supra,* 543 U.S. at p. 233.)  The majority opinion by Justice Stevens also expressed a view that provoked no disagreement among the Justices: that the Federal Sentencing Guidelines would not violate the Sixth Amendment if they were advisory rather than prohibitive. (*Ibid.*)  In

20

an opinion by Justice Breyer, which also garnered the support of a five-Member majority, the Court preserved the Federal Sentencing Guidelines by rendering them advisory. The Court severed two provisions of the Sentencing Reform Act of 1984, 18 U.S.C. section 3553, subdivision (b)(1) (which mandated the imposition of a Guidelines sentences unless the district court found an aggravating or mitigating circumstances not adequately covered by the Guidelines) and 18 U.S.C. section 3742, subdivision (e) (which directed the United States Courts of Appeals to determine if the facts of the case warranted any departure from the Guidelines.) (*Id.* at pp. 246-249.)

In *People v. Black* (2005) 35 Cal.4th 1238 (*Black*), this Court decided that California's determinate sentencing law did not run afoul of the Sixth Amendment under the United States' Supreme Court's decisions in *Blakely* and *Booker*. The Court reasoned that the DSL resembled the post-*Booker* Federal Sentencing Guidelines, in that it "simply authorize[s] a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." (*Black, supra,* 35 Cal.4th at pp. 1254, 1261.) The upper term of each triad of sentencing choices, the Court decided, was the "statutory maximum" authorized by the jury's verdict, and therefore the court's factfinding did not violate the defendant's right to jury trial. (*Id.* at p. 1254.)

On January 22, 2007, a six-Member majority of the United States Supreme Court invalidated *Black* and held that the DSL was

analogous to the Washington scheme of sentencing law found to violate the Sixth Amendment in *Blakely*. (*Cunningham, supra*, at pp. 17-21.) The High Court noted that:

> The attempted comparison [to *Booker*] is unavailing... this Court in *Booker* held the Federal Sentencing Guidelines incompatible with the Sixth Amendment because the Guidelines were "mandatory and imposed binding requirements on all sentencing judges."

> California's DSL does not resemble the advisory system the *Booker* Court had in view. Under California's system, judges are not free to exercise "their discretion to select a specific sentence within a defined range." California's Legislature has adopted sentencing triads with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decision make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard...

(*Id.* at pp. 18-19.) The high Court emphasized that the middle term, not the upper term, is the relevant statutory maximum. (*Id.* at p. 21.)

## C.    The Trial Court Erred In Violation Of *Blakely* And *Cunningham*

Although no published opinion has agreed with this argument, petitioner contends that the imposition of consecutive sentences should also be subject to scrutiny under *Blakely* and *Cunningham*. The factors used to impose consecutive sentences must be found by a jury, admitted, or based upon a prior conviction.

Penal Code section 669 provides that, in the absence of special findings by the trial judge, sentences for two or more felonies suffered in the same proceeding shall run concurrently. The rule implementing that statute is rule 4.425 of the Rules of Court, which provides a list of aggravating circumstances to be considered in deciding whether to impose consecutive terms. In order to sentence consecutively rather than concurrently, the trial judge must find one or more of the factors listed in rule 4.425. A concurrent sentence is therefore the statutory maximum as defined in *Cunningham*. (See also *State v. Foster* (2005) 845 N.E.2d 470, 490.)

None of these factors are presented to a jury for proof beyond a reasonable doubt. Consecutive sentencing is an enhanced sentencing power reserved solely to the trial judge based upon factors beyond those authorized by the jury verdicts, admissions, or fact of a prior conviction. As such, the consecutive sentencing scheme in California fails the *Apprendi* test as explained in *Blakely* and *Cunningham*, and thus violates the Sixth Amendment right to a jury trial.

Here, the trial court made a finding that petitioner's crimes were not committed so closely in time as to indicate a single period of aberrant behavior. (1 R.T. p. 223.) This factor, described by Rule 4.425(a)(3), is qualitative and subjective, and is not related to recidivism, thus under *Blakely* should require a jury determination.

Under the rationale of *Blakely* and *Cunningham*, imposition of consecutive sentences increases a sentence beyond what could be applied by a sentencing judge without further fact-finding. A

defendant has a right to have a jury decide the facts upon which punishment is based. Although courts have not found a statutory preference for concurrent sentences over consecutive sentences, the fact that some statutory provisions require consecutive sentencing (e.g. §§ 1170.12 and 1170.16), creates an inference that concurrent sentencing is the default approach to sentencing separate felony convictions which arise out of the same prosecution. By necessary implication then, consecutive sentencing in cases in which it is not statutorily required should fall under the strictures of *Blakely* and *Cunningham*.

## CONCLUSION

For the reasons given above, petitioner respectfully requests this Court to grant review of both questions presented.

Respectfully submitted,

Lise M. Breakey
Attorney for Petitioner
Tuan Phuong Nguyen

24

APPENDIX B. pp. 6-16

Memordum with Addition Support
And Argument In Support Herein with
Points And Authorities.

APPENDIX B. pp. 6-16

Memordum with Addition Support
And Argument In Support Herein with
Points And Authorities.

## ARGUMENT

### I.

**THE TRIAL COURT PREJUDICIALLY ERRED IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BY REFUSING TO DISCLOSE MATERIAL EVIDENCE IN RESPONSE TO APPELLANT'S POST-TRIAL *PITCHESS* MOTION AND BY DENYING A NEW TRIAL ON THE GROUNDS THAT THE UNDISCLOSED EVIDENCE WAS NOT PREJUDICIAL.**

### A.    Introduction And Summary Of The Argument

Appellant was convicted of six counts of bribing an executive officer. Detectives Lima and Tolosa visited Happy Tanning and received money from appellant or his wife on each of three occasions. On the second and third occasions (December 7, 2004 and January 25, 2005), the officers audiotaped the transaction.

**The Defense At Trial:** In counts one and two (November 16, 2004), the case against appellant consisted solely of the testimony of Detective Lima. (1 R.T. pp. 23-26.) Similarly, counts three and four (December 7, 2004) were founded upon Lima's testimony that appellant was involved in the transaction via cell phone, because appellant was not present at Happy Tanning, and his voice did not appear on the tape. (1 R.T. pp. 27-32; 1 C.T. pp. 438-452.) Counts five and six were founded upon both Lima's testimony and the audiotaped transaction with appellant. (1 R.T. pp. 38-40; 1 C.T. pp. 453-472.) However, there was no direct mention of money paid by appellant on the tape. The proof of bribery depended heavily upon the context of the conversation provided by Lima's testimony. Detective

Tolosa testified only that he was present on each occasion and received cash that he booked into evidence. (1 R.T. pp. 90-91.)

Appellant's trial counsel, Frank Barilla, attempted to set up an entrapment defense on cross-examination of Detective Lima. He attacked the credibility of the officers and suggested that they were misrepresenting the events that actually occurred. (1 R.T. pp. 64-79.) Barilla intimated at closing argument that appellant was entrapped by corrupt police who demanded bribes in order to allow his business to continue. (1 R.T. pp. 160-167.) However, Barilla, who substituted in as counsel about a month before trial, never conducted any investigation, nor filed any written discovery motions prior to trial, and thus could not impeach these officers with any prior misconduct that might have eroded their credibility. (1 C.T. pp. 111, 126; 2 C.T. p. 255.) In particular, Barilla did not file a motion for discovery of the personnel records of Detectives Lima and Tolosa pursuant to Evidence Code sections 1043-1047, *Pitchess v. Superior Court* ((1974) 11 Cal.3d 531), and *Brady v. Maryland* ((1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215 ].)

**The Post-Trial *Pitchess* Motion:** Following his conviction, appellant acquired new counsel, Kristin Erickson. New counsel filed a *Pitchess* motion on his behalf in order to uncover information that would support an argument in a motion for new trial that trial counsel was ineffective. (2 C.T. pp. 238-259.) The trial court found good cause and examined the personnel records of Lima and Tolosa in camera for evidence of solicitation of bribes, complaints of false arrests, allegations of false police reports, and perjury. (1 R.T. pp. 188-197.) The trial court denied counsel's request to examine the

files for evidence of excessive force or violation of civil rights.  (1 R.T. p. 191.)  The trial court ultimately denied counsel's motion for disclosure of the information with these words:

> There is no discoverable material contained in Officer Tolosa's file.  As to Officer Lima, there is nothing contained in that file that would lead this court to believe that Mr. Nguyen has not received a fair trial.

(1 R.T. p. 198.)

**The Motion For New Trial:** Appellant's new counsel then filed a motion for new trial on the grounds of ineffective assistance of counsel and denial of due process based upon the trial court's failure to disclose information found in Lima's file.  (2 C.T. pp. 358-381.) The motion alleged in part that the trial court had improperly denied discovery of material and exculpatory evidence contained in Lima's personnel file.  Appellant argued that the trial court erred by using the wrong standard, assessing the evidence in Lima's file for its persuasive force rather than its materiality only.  (2 C.T. pp. 358-367; 1 R.T. pp. 199-200.)  The trial court denied the motion as follows:

> I did find that there was material [contained in Lima's personnel file] that would have been disclosed prior to trial, but looking back in retrospect after trial, it's the court's conclusion that that evidence was of such little probative value that number one, it probably would not have been admitted to begin with, but second of all, it would not have made a difference in the outcome of this trial.  It would not have raised a reasonable doubt concerning that particular officer's testimony.

(1 R.T. p. 203.)  In denying the new trial motion, the trial court made clear that in determining whether or not to disclose material evidence, he assessed it under the standard for ruling on a motion for new trial

on the grounds of ineffective assistance of counsel. Appellant was required to show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different, before the trial court would disclose the evidence in Lima's file. (1 R.T. pp. 202-203.)

**Summary:** The trial court erred in requiring appellant to demonstrate prejudice in the context of a discovery motion, even though made post-trial. "The trial court thus created a Catch-22" (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392), for appellant could not demonstrate the likely effect of undisclosed evidence on the trial's outcome. Most significantly, the court's ruling deprived appellant of the opportunity to investigate the complaints against Lima, as trial counsel would have been able to do if he *had* brought a timely *Pitchess* motion. Thus appellant was denied the chance to determine if there was other evidence that would have demonstrated sufficient misconduct on the part of Detective Lima to justify a new trial.

## B.    Standard Of Review

Since the trial court's error occurred in ruling on a *Pitchess* motion, this Court may review it for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) However, because the trial court made an error of law in determining the standard by which to evaluate the evidence in Lima's personnel file, appellant requests *de novo* review. (*Fletcher v. Superior Court, supra*, 100 Cal.App.4th at p. 390 [interpretation of a legal principle is a question of law which the appeals court reviews *de novo*.])

In *Fletcher*, the trial court found defendant made a showing of good cause sufficient to permit *Pitchess* discovery of prior complaints against arresting officers at their current place of employment. However, the trial court denied *Pitchess* discovery of information of previous employment by other police agencies within the five-year time limit provided by law. (*Fletcher v. Superior Court, supra,* 100 Cal.App.4th at pp. 389 and 392.)   In determining that the issue warranted *de novo* review, the First District observed:

> The trial court's ruling is unambiguous in its conclusion that the facts offered were sufficient to establish the required material connection between the charged offense and the information sought pertaining to current employment.  The court also concluded that the same facts were insufficient to permit examination of even the bare fact that the officers might have been in the current jobs less than five years and previously employed elsewhere as police officers.  Therefore, the trial court must have required a different showing of materiality as to prior police employment than the showing that the court had already found sufficient to require disclosure of information regarding current employment. The decision to apply a different standard of proof of materiality was necessarily a legal determination.

(*Id.* at p. 391.)

Similarly here, the trial court made a legal determination to elevate the showing for *Pitchess* disclosure beyond the "relatively low" threshold required by law. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-86.)  "All the law requires to show good cause to permit such discovery is the 'materiality' of the information to the subject matter of the pending litigation..." (*Fletcher v. Superior Court, supra,* 100 Cal.App.4th at p. 392.)  The

court stated, "I think it is pretty obvious that none of us have been able to find any case law specifically on point with regard to the question of a *Pitchess* motion post trial as to exactly what standard is to be applied." (1 R.T. p. 203.) The court then revealed that there was material evidence that would have been disclosed if competent trial counsel had brought a timely *Pitchess* motion, but declined to disclose it post-trial because it would not have raised a reasonable doubt concerning Lima's testimony. (1 R.T. p. 203.) Since the trial judge stated that he would have disclosed the evidence under the lower standard of materiality, he clearly made his decision not to do so as a matter of law. The issue should therefore be considered by this Court *de novo*.

C.   **The Trial Court Erred By Elevating The Standard Of Proof Beyond The Relevance Required For Disclosure And By Denying The Motion For New Trial Without Disclosing Material Evidence And Permitting Opportunity For Further Discovery To Demonstrate Prejudice Resulting From Counsel's Omission.**

The trial judge's refusal to disclose the evidence he had determined was material to the defense was error as a matter of law and also constituted an abuse of discretion because the court improperly elevated the showing of cause for *Pitchess* disclosure beyond that required by law.

Evidence Code sections 1043 and 1045 establish a two-step procedure for discovery of police officer personnel records by a criminal defendant. First, Evidence Code section 1043 requires the defendant to file a written motion for discovery, with notice to the government agency which has the custody of the records sought. The

motion must include "a description of the type of records or information sought" supported by "affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records." The second step is *an in camera* examination by the trial court of the potentially relevant records to determine if they have any relevance to the defense. (*City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1143.) In this case, the trial court found good cause, examined the records, and determined at that least some of them were relevant, but refused disclosure to the defense. (1 R.T. p. 203.)

A criminal defendant is entitled to discovery of *all* documents or information in the personnel records of a police officer that the trial court has determined is relevant to his defense, except as provided in Evidence Code section 1045. "Once a court determines in camera that a defendant has shown the records contain information that is relevant to the subject matter involved in the pending litigation... an accused is entitled to any pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense." (*Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 51 [citations omitted].) "The only general standard for discovery of privileged information in an officer's personnel file has always been its potential relevance as determined by a judge." (*Fletcher v. Superior Court, supra,* 100 Cal.App.4th at p. 394)

Here, the trial judge noted that he was unable to find case law applicable to the standard for disclosure for *Pitchess* material post-trial. (1 R.T. p. 203.) The purpose of a post-trial *Pitchess* motion is to allow the defendant to investigate and determine if there is evidence sufficient to undermine confidence in the verdict that competent counsel could have discovered by exercising due diligence. The quest for such evidence goes well beyond what may be in the police personnel files. The premise of allowing *Pitchess* discovery has always been "to permit the petitioner to discover facts which will *lead to admissible evidence*, and not only evidence which is itself admissible." (*Fletcher v. Superior Court, supra*, 100 Cal.App.4th at p. 404 [emphasis added].) The application of a prejudice standard to the decision of whether or not to disclose the evidence to the defense in the first place clearly frustrates that purpose. The only purpose served by the decision not to disclose *Pitchess* evidence on the grounds that the jury would not have found it persuasive is to cut off discovery before it has begun. (*Ibid.*)

Once all relevant evidence that can be discovered through a *Pitchess* motion and follow-up investigation has been discovered, the defendant may *then* elect to bring a motion for new trial. At that point, not sooner, the trial court should assess the sum total of the new evidence to determine if there is a reasonable probability of a different result. (*People v. Andrade* (2000) 79 Cal.App.4th 651, 659-660 [A new trial may be granted where... defendant shows that counsel's deficient performance resulted in prejudice to defendant]; *People v. Fosselman* (1983) 33 Cal.3d 572, 582-583; *Strickland v. Washington* (1984) 466 U.S. 668, 684, 686 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

Competent trial counsel in this case would have investigated and followed up on *Pitchess* evidence disclosed by the court (which usually consists only of the names, addresses, and telephone numbers of complainants) to discover other evidence, if any, of misconduct sufficient to impeach Lima or to establish an entrapment defense. Thus the trial court's application of a prejudice standard to a discovery motion served to deprive appellant of the opportunity to determine the extent to which trial counsel's incompetence deprived him of a sound defense.

Further, the trial court could not properly measure the persuasiveness of the evidence in the context of a new trial motion without providing the defense an opportunity to investigate the complaints, as trial counsel would have been able to do if he *had* brought a timely *Pitchess* motion. There was no justification for the trial court to raise the standard for disclosure beyond "materiality" or "relevance" simply because the motion was brought post-trial.

**D.    The Trial Court's Error Deprived Appellant Of Due Process As Well As The Effective Assistance Of Counsel.**

"This procedural mechanism for criminal defense discovery [the *Pitchess* motion]... must be viewed against the larger background of the prosecutor's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225; *United States v. Bagley* (1985) 473 U.S. 667, 674-678 [105 S.Ct. 3375, 87 L.Ed.2d 481]; *Brady v. Maryland, supra*, 373 U.S. at p. 87 [83 S.Ct. 1194, 10 L.Ed.2d 215].)

14

"Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess v. Superior Court, supra,* 11 Cal.3d at p. 536.) The trial court stated that one or more complaints or other information material to the defense did, in fact, exist in Detective Lima's personnel file. (1 R.T. p. 203.) Materiality was all that was necessary to require disclosure. Rather than disclose the evidence, however, the trial court went a step farther and determined that the evidence, while material, might not have been admitted, and was not persuasive enough to create a reasonable probability of a different outcome under the standard of *Strickland v. Washington* (*supra,* 466 U.S. at p. 686 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

Appellant was thus denied the ability to argue that the undisclosed evidence was admissible and might have made a difference to the jury, and more importantly, the opportunity to determine if there was other evidence that would have demonstrated sufficient misconduct and/or acts of moral turpitude on the part of Detective Lima to justify a new trial. The trial court should have disclosed the material evidence in the file to the defense in order that counsel might investigate, follow up any leads provided, and brought the motion for a new trial based upon the evidence relevant to impeach Lima and/or to the defense of entrapment discovered in the file and in the follow-up investigation. Only then could the trial court have properly assessed the prejudice resulting from trial counsel's neglect of the case.

Detective Lima was the primary witness against appellant. The prosecutor's case relied wholly upon his testimony in counts one and two. In counts three through six, the case also depended very heavily upon his testimony that appellant was involved, and that the audiotaped transactions were in fact bribes. His credibility was of utmost importance. Any evidence, even if remote, of prior acts of moral turpitude, including corruption, blackmail, extortion, soliciting bribes, perjury, filing false police reports, use of excessive force, or violation of civil rights would have eroded the prosecutor's case or supported an entrapment defense. By resorting to a decision-making procedure that cut appellant out completely, the trial court violated his right to due process of law.

Appellant therefore requests that this court remand the case to the trial court for a new trial (see *People v. Gill* (1997) 60 Cal.App.4[th] 743, 751 [*any* discoverable *Pitchess* evidence which should have been disclosed to the defense warrants a new trial]), or alternately, with instructions to disclose the records already found to be material and permit appellant to bring a new trial motion based upon those complaints and the evidence produced by a follow-up investigation.

# Appendix C. pp. 2-8

Memorandum with Addition Support And Argument In Support Herein with Points And Authorities.

# Appendix C. pp. 2-8

Memorandum with Addition Support And Argument In Support Herein with Points And Authorities.

**I.**

**THE TRIAL PREJUDICIALLY ERRED IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL BY REFUSING TO DISCLOSE MATERIAL EVIDENCE IN RESPONSE TO APPELLANT'S POST-TRIAL *PITCHESS* MOTION ON THE GROUNDS THAT THE UNDISCLOSED EVIDENCE WAS NOT PREJUDICIAL.**

Appellant argues in the opening brief that the trial court erred as a matter of law by elevating the standard for *Pitchess* discovery and requiring appellant to demonstrate admissibility and prejudice before disclosing material evidence. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) The trial court's decision was not justified by the fact that appellant's *Pitchess* motion was brought post-trial, because the court could not properly weigh the persuasiveness of the evidence in the context of a new trial motion without providing appellant an opportunity to investigate the complaints for other evidence of misconduct on the part of the police witness sufficient to create a reasonable probability of a different outcome. Appellant could neither discover new evidence, nor argue the prejudicial effect of the evidence that the court refused to disclose. Appellant was thus deprived of due process in his motion for new trial on grounds of ineffective assistance of counsel, and should be granted a new trial or be permitted to renew the motion in the trial court with the benefit of prior *Pitchess* discovery. (A.O.B. pp. 9-16.)

Respondent principally argues 1) that the trial court did not elevate the standard of review beyond the "materiality" standard, but merely applied it with the benefit of hindsight (R.B. pp. 9-12); 2) that

2

the trial court did not find any material evidence in the course of the *Pitchess* review that would entitle appellant to disclosure (R.B. pp. 6-7); and 3) that appellant cannot demonstrate that he was prejudiced at trial by the lack of the undisclosed evidence (R.B. pp. 13-14). Respondent's arguments are supported by neither the facts, nor the law, and must be rejected.

## A. The Trial Court Elevated The Standard For Disclosure From Materiality To Prejudice.

Respondent states, "The court determined there was nothing to disclose in Sergeant Lima's file because it did not contain any records that would lead the court to believe that **appellant did not receive a fair trial.**" (R.B. p. 7, citing 1 R.T. p. 198, emphasis added.) This statement alone suffices to demonstrate that the trial court withheld disclosure on the grounds that the evidence in Lima's file was not strong enough to influence the jury – in other word, for lack of prejudice. But respondent also fails to refute, or to mention, the trial court's statements at the hearing for appellant's motion for new trial:

> The court's rulings are primarily based on *Strickland v. Washington*, which is at 466 U.S. 668. "And ruling on a motion for new trial, the defendant must show that there is a reasonable probability absent or but for counsel's unprofessional errors, the result or proceeding would have been different when a defendant challenges a conviction. The question is, whether there is a reasonable probability that absent the errors, the fact finder would have had a reasonable doubt suspecting guilt."

> I think it's pretty obvious that none of us have been able to find any case law specifically on point with regard to

3

the question of a *Pitchess* motion post trial as to exactly
what standard is to be applied.

And I disagree with [defense counsel] that is complying
with the standard for *Pitchess*. And it was refreshing to
see that you did pick up on the court's ruling [at the
*Pitchess* hearing].

I did find that there was material [contained in Lima's
personnel file] **that would have been disclosed prior to
trial,** but looking back in retrospect after trial, it's the
court's conclusion that that evidence was of such little
probative value that **number one, it probably would not
have been admitted to begin with,** but **second of all, it
would not have made a difference in the outcome of
this trial. It would not have raised a reasonable doubt
concerning that particular officer's testimony.**

(1 R.T. pp. 202-203, emphasis added.) In denying the new trial
motion, the trial court thus made clear that in determining whether or
not to disclose material evidence, he assessed it under the standard for
ruling on a motion for new trial on the grounds of ineffective
assistance of counsel. Appellant was required to show a reasonable
probability that, but for counsel's unprofessional error, the result of
the proceeding would have been different, before the trial court would
disclose the evidence in Lima's file.

Assuming for the moment that respondent were correct in
asserting that the court applied a "materiality with hindsight"
standard, respondent cites no authority suggesting it as a correct
procedure. Indeed, the premise of allowing discovery of a police
witness' file is "to permit the petitioner to discover facts which will
lead to admissible evidence, and not only evidence which is itself
admissible." (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386,

404.) Clearly, the use of hindsight will not permit the trial court to determine whether evidence as yet undiscovered is material, admissible, or sufficient to have raised a reasonable doubt in the jurors' minds.

Respondent claims that the trial court could better assess the relevance of the undisclosed evidence to appellant's defense because hindsight enabled him to judge Lima's credibility. This is not the trial court's province. (Evid. Code, § 312, subd. (b).) To evaluate the evidence with an eye to Lima's credibility is simply to determine what effect the evidence might have had in the jury's eyes – in short, whether or not the evidence could have created a reasonable doubt. This is a standard of prejudice, not materiality.

Respondent further cites the court's duty to balance appellant's right to a fair trial with Lima's privacy rights (R.B. p. 11), but overlooks the fact that the "materiality" standard, along with Evidence Code section 1045, has long been the appropriate safeguard in California. A criminal defendant is entitled to discovery of all documents or information in the personnel records of a police officer that a trial court has determined is relevant to his defense, except as provided in Evidence Code section 1045. (*Id.* at p. 394; *Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 51.)

**B.    The Trial Court Determined That Lima's File Contained Evidence Material To The Defense.**

The trial court stated that Officer Lima's file contained information that the court would have disclosed to the defense if counsel had brought the motion pre-trial. (1 R.T. p. 203.) There is hardly any simpler way to state that the information was material to

the defense. The trial court would have been entitled not to disclose the evidence if it consisted of "facts... that are so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b)(3).) But the court did not make such finding; he merely questioned whether the information was probative enough to make it admissible. "Materiality" is a simple and relatively low standard, lacking the complexity of a question of admissibility. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-86.) Because the court found that the evidence was material, it should have been disclosed to permit discovery of further admissible facts, and argument on a new trial motion that all the evidence together sufficed to raise a reasonable doubt. The trial court cut off discovery before it began and deprived appellant of his due process rights.

## C.    Appellant's Inability To Prove Prejudice Itself Demonstrates The Denial Of Due Process

The trial court's ruling created a Catch-22 for appellant: he could not learn about any former misconduct by Officer Lima unless he could prove that the undisclosed information would have created a reasonable doubt in the jury's minds. (See *Fletcher v. Superior Court, supra,* 100 Cal.App.4[th] at p. 392.) It also deprived him of the opportunity to pursue other admissible evidence, as he would have been able to do if competent counsel had brought a *Pitchess* motion prior to trial. Because the denial of due process is a federal constitutional error (*People v. Mooc* (2001) 26 Cal.4[th] 1216, 1225; *United States v. Bagley* (1985) 473 U.S. 667, 674-678 [105 S.Ct. 3375, 87 L.Ed.2d 481]; *Brady v. Maryland, supra,* 373 U.S. at p. 87 [83 S.Ct. 1194, 10 L.Ed.2d 215]), it is for respondent to demonstrate

6

that the error did not prejudice appellant. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Respondent has not done so. Respondent argues essentially that appellant would have needed more than evidence sufficient to discredit Officer Lima to raise a reasonable doubt that the transactions took place. (R.B. pp. 13-14.) The argument demonstrates a fundamental misunderstanding of appellant's defense at trial. Appellant did not deny that the transactions took place, but rather argued that he was shaken down by corrupt police, thus raising an entrapment defense. (1 R.T. pp. 64-79, 107, 160-167.) None of the evidence cited by respondent as corroborating Lima's testimony is inconsistent with entrapment. Dective Tolosa did not corroborate Lima's testimony as to the nature of the transactions as bribes, but merely testified that he was present and received money. (1 R.T. pp. 90-91.) Such testimony does not disprove that Lima himself demanded the money of appellant. There was no audiotape to back up any of Lima's testimony as to counts one and two, on the date on which the appellant supposedly first made his offer. In counts three and four, Lima's testimony was the only evidence that appellant was involved at all. (See 2 C.T. pp. 438-450.) And in counts three through six, only Lima provided any testimony to prove that the transactions were bribes, for the audiotapes do not provide sufficient context. (See 2 C.T. pp. 460-470.)

Detective Long Nguyen testified that appellant told him that Lima had "been taking bribe[s] from him in excess over a thousand dollars for over a year." (1 R.T. p. 105.) This testimony does not disprove entrapment; indeed, it strongly implies that Lima instigated

7

the corrupt relationship between himself and appellant, and that appellant, who acted as an informer for police, was asking Detective Nguyen for help. (1 R.T. pp. 104-105, 108.) Further, this testimony tended to discredit Lima, who testified that appellant offered him a bribe for the first time on November 16, 2004, and for the last time on January 25, 2005 – a period of two and a half months. (1 R.T. pp. 21-22, 23-24, 38-39, 64.)

Lima's credibility was of utmost importance to the prosecutor's case. Any evidence of prior acts of moral turpitude, particularly corruption, blackmail, extortion, soliciting bribes, perjury, or filing false police reports, could have supported and proved an entrapment defense, thereby raising a reasonable doubt of appellant's guilt. Appellant therefore requests that this court remand the case to the trial court for a new trial (see *People v. Gill* (1997) 60 Cal.App.4[th] 743, 751 [*any* discoverable *Pitchess* evidence which should have been disclosed to the defense warrants a new trial]), or alternately, with instructions to disclose the records already found to be material and permit appellant to bring a new trial motion based upon those complaints and the evidence produced by a follow-up investigation.

# Appendix D.

## Copy of the Supreme Court Denial.

# Appendix D.

## Copy of the Supreme Court Denial

Court of Appeal, Fourth Appellate District, Div. 3 - No. G036837
**S154677**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

TUAN PHUONG NGUYEN, Defendant and Appellant.

The petition for review is denied.
The request for an order directing depublication of the opinion is denied.

SUPREME COURT
**FILED**

SEP 2 5 2007

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice

# Appendix E.

Appeal Court's Opinion pp. 1-27

# Appendix E.

Appeal Court's Opinion pp. 1-27

Filed 6/13/07

\

### CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TUAN PHUONG NGUYEN,<br><br>    Defendant and Appellant. | G036837<br><br>(Super. Ct. No. 05CF1163)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge. Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110(a), this opinion is certified for publication with the exception of the part titled, "*Consecutive Sentencing Did Not Violate Defendant's Right to a Jury Trial.*"

Defendant Tuan Phuong Nguyen contends the court applied the wrong standard to his posttrial *Pitchess* motion.[1]  Defendant had filed the motion after his bribery conviction to gather evidence for a new trial motion, in which he would assert ineffective assistance of counsel.  The court denied the motion.  It found the requested police personnel records were immaterial to the new trial motion because they did not support an ineffective assistance claim.  Defendant contends the court should have disclosed the requested records because they were material to his defense at trial.

The court did not err.  By statute, a *Pitchess* motion compels disclosure of police personnel records only if they are material to the pending litigation.  Because defendant had already been convicted, the pending litigation was his new trial motion.  Thus, the court correctly considered whether the requested records were material to his ineffective assistance claim.  The court did not abuse its discretion by concluding the requested records were immaterial to this claim.

In a supplemental brief, defendant contends the court violated his right to a jury trial by imposing consecutive sentences based on facts not found by a jury.  Not so.  Consecutive sentencing may be imposed based on facts found by the court, without implicating defendant's right to a jury trial.  We affirm.

FACTS

Santa Ana police detectives Lima and Tolosa had been investigating ongoing prostitution at defendant's tanning salon.  Defendant gave the officers two envelopes each containing $500 in cash.  He promised, "Next time it will be better."  The detectives booked the cash into evidence and reported it to the Orange County District Attorney's Office.  They returned to the tanning salon twice more, each time receiving

---

[1]     (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

2

cash from defendant. Defendant also asked the officers to scare away a competing prostitution ring. Eventually, the police officers arrested defendant.

The district attorney filed an information charging defendant with six counts of bribing an executive officer. (Pen. Code, § 67.) The detectives testified at trial. The prosecution played recordings of their conversations with defendant. A district attorney's office investigator testified defendant had reported bribing Detective Lima. Defendant called no witnesses. Instead, defense counsel cross-examined the prosecution's witnesses in an attempt to show entrapment.

The jury found defendant guilty on all counts. The court sentenced defendant to a total term of five years in state prison. It imposed a midterm of three years on count one, plus two consecutive one-year sentences (one-third the midterm) for counts three and five. It stayed sentencing on counts two, four, and six. (Pen. Code, § 654.)

Defendant retained new counsel, who filed a *Pitchess* motion to discover the detectives' personnel records. Defense counsel sought the records to support a new trial motion, in which she intended to claim ineffective assistance of counsel. Specifically, she claimed trial counsel had unreasonably failed to file an earlier *Pitchess* motion to gather evidence to impeach the detectives. The court agreed to review the detectives' personnel records for evidence they had solicited bribes, made false arrests, submitted false police reports, or committed perjury. After reviewing the records, the court stated, "There is no discoverable material contained in Officer Tolosa's personnel file. As to Officer Lima, there is nothing contained in that file that would lead the court to believe that [defendant] has not received a fair trial. There is nothing to disclose."

Defense counsel later filed a new trial motion, claiming the court should have disclosed Detective Lima's personnel records. The court noted the records did not support defendant's ineffective assistance claim, even though they would have been responsive to an earlier *Pitchess* motion. The court stated, "I did find that there was material that would have been disclosed prior to trial, but looking back in retrospect after

3

trial, it's the court's conclusion that that evidence was of such little probative value that number one, it probably would not have been admitted to begin with, but second of all, it would not have made a difference in the outcome of this trial. It would not have raised a reasonable doubt concerning that particular officer's testimony." The court denied the motion, and sentenced defendant to a total term of five years in state prison.

## DISCUSSION

*The Court Correctly Denied Defendant's Pitchess Motion*

     In *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, the court "established that a criminal defendant could 'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge against him. [¶] In 1978, the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045. [Citations.] To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018-1019.)

     Defendant notes the "relatively low threshold for discovery" pursuant to a *Pitchess* motion. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83.) As he states, "[a]ll the law requires to show good cause to permit such discovery is the 'materiality' of the information to the subject matter of the pending litigation . . . ." (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392; accord Evid. Code, § 1043, subd. (b)(3) [*Pitchess* motion requires an affidavit "setting forth the materiality [of the requested personnel records] to the subject matter involved in the pending litigation"].)

4

The issue is what constitutes the "pending litigation" to which Detective Lima's personnel records must be material. Defendant contends the court erred by requiring him to show the requested records were material to his new trial motion. Rather, he asserts he needed to show only that the records were material — as the court conceded — to his defense of the underlying prosecution.

A recent decision has construed the phrase, "pending litigation," in a similar context. In *Hurd v. Superior Court* (2006) 144 Cal.App.4th 1100 (*Hurd*), the defendant filed a posttrial *Pitchess* motion to gather support for a habeas corpus petition. (*Hurd*, at p. 1105.) The court held Penal Code section 1054.9, which allows for pre-habeas corpus discovery, authorized the motion. (*Hurd*, at p. 1108.) But it required defendant to show the requested records were material to his habeas corpus petition, not his defense to the underlying prosecution. (*Id.* at p. 1105.) The court noted a *Pitchess* motion must "'set[] forth the materiality [of the desired personnel records] to the *subject matter involved in the pending litigation* . . . .'" (*Hurd*, at p. 1110.)

The *Hurd* court concluded, "We deem the litigation to which the discovery must be material within the meaning of [Evidence Code] section 1043 to be the habeas corpus proceeding that has been or will be initiated by petitioner's habeas corpus petition. We deem the scope of the *Pitchess* discovery available under [Penal Code] section 1054.9 to be that justified by such current materiality to claims cognizable on habeas corpus." (*Hurd, supra,* 144 Cal.App.4th at p. 1111.) The court held the defendant was not entitled to discovery because the desired personnel records were immaterial to his posttrial claims, which themselves were not even cognizable on habeas corpus. (*Id.* at pp. 1112-1114.)

*Hurd's* conclusion applies with equal force here. After defendant was convicted, the "pending litigation" to which the requested records had to be material was his new trial motion claiming ineffective assistance. (*Hurd, supra,* 144 Cal.App.4th at p. 1111; accord Evid. Code, § 1043.) To prevail on this claim, defendant would have to

5

show a "reasonable probability" that competent performance would have led to a different result. (*Strickland v. Washington* (1984) 466 U.S. 668, 693-694.) Thus, the proper standard for reviewing defendant's posttrial *Pitchess* motion was whether a reasonable probability existed that disclosure of the requested records would have led to a different result at trial.

The court applied this correct standard. It denied defendant's motion because the requested records were likely inadmissible and "would not have made a difference in the outcome of this trial." Contrary to defendant's claim, the court correctly reviewed his posttrial *Pitchess* motion through the lens of his new trial motion claiming ineffective assistance — this was the only litigation pending at the time.

Because the court applied the correct standard, the next issue is whether it applied the standard correctly. Defendant bears the burden of showing the court abused its discretion by denying his posttrial *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226, 1228.) He did not provide us with the requested personnel records. On the existing record, defendant has not shown the court abused its discretion by concluding disclosure of the records would not have led to a different result at trial.

*Consecutive Sentencing Did Not Violate Defendant's Right to a Jury Trial*

We allowed defendant to file a supplemental brief addressing the United States Supreme Court's decision in *Cunningham v. California* (2007) ___ U.S. ___ [127 S.Ct 856 ] (*Cunningham*). Defendant contends *Cunningham* precluded the court from imposing consecutive sentences based on its own finding that his crimes were "committed at different times . . . , rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule

4.425(a)(3).) Defendant asserts his Sixth Amendment right to a jury trial entitled him to a jury determination of the factual basis for imposing consecutive sentences.[2]

To start, it is unclear whether the decision to impose consecutive sentences here involved judicial factfinding at all. In their verdicts on counts 1, 3, and 5 — the counts for which the court imposed consecutive sentences — the jury found defendant guilty of the offenses "as charged in [the counts] of the amended [i]nformation." In counts 1, 3, and 5 of the amended information, the People alleged defendant bribed a detective "[o]n or about November 16, 2004," "[o]n or about December 07, 2004," and "[o]n or about January 25, 2005." Thus, the verdicts strongly suggest the defendant committed the crimes at different times.

Even if the court engaged in some judicial factfinding here, *Cunningham* simply does not call into question our consecutive sentencing rules. Imposing consecutive sentences for multiple offenses does not increase a defendant's punishment beyond the statutory maximum *for each offense*. Here, the prescribed statutory maximum penalty for the offense of bribing an executive officer is the midterm, three years in state prison. (Pen. Code, § 67.) Defendant committed six such offenses. The court sentenced him to three years on one count, consecutive one-year terms on two other counts, and stayed sentencing on the last three counts. By imposing consecutive sentences, the court merely directed the *manner* in which defendant would serve the "no more than the statutory maximum" sentences for three of his offenses. It did not increase the penalty for any one of defendant's offenses beyond the three-year statutory maximum.

---

[2]    Defendant did not forfeit this issue by failing to object below. A defendant may raise his deprivation of fundamental constitutional rights, such as the right to a jury trial, for the first time on appeal. (*People v. Vera* (1997) 15 Cal.4th 269, 276-277; *People v. Holmes* (1960) 54 Cal.2d 442, 443-444.) Moreover, *Cunningham* was decided while this appeal was pending, well after defendant's sentencing.

Defendant cannot point to any offense for which the court imposed more than the statutory maximum.

Our conclusion is consistent with prevailing Sixth Amendment jurisprudence. Courts across the country routinely uphold consecutive sentencing against Sixth Amendment claims. "[T]he vast majority of courts that have considered this question in the wake of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*)] and *Blakely* [*v. Washington* (2004) 542 U.S. 296 (*Blakely*)] have reached the conclusion that judicial factfinding in support of consecutive sentences does not violate the Sixth Amendment. [W]e agree with that proposition." (*State v. Tanner* (Or.Ct.App. 2006) 150 P.3d 31, 34.)[3]

Accordingly, we conclude a court's decision to impose consecutive sentences, even if it requires judicial factfinding, does not violate a defendant's right to a jury trial. We reject defendant's *Cunningham* claim.

---

[3]        (See, e.g., *Smylie v. State* (Ind. 2005) 823 N.E.2d 679, 686 ["There is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums"]; *State v. Cubias* (Wash. 2005) 120 P.3d 929, 932 ["we are convinced that consecutive sentences do not violate *Blakely*"]; *State v. Abdullah* (N.J. 2005) 878 A.2d 746, 756-57 ["consecutive sentences do not invoke the same concerns that troubled the Supreme Court in *Apprendi* [and] *Blakely*"]; *State v. Senske* (Minn.Ct.App. 2005) 692 N.W.2d 743, 749 ["Consecutive sentencing involves separate punishments for discrete crimes . . . , there is no basis to apply *Blakely* to consecutive sentences"].)

8

DISPOSITION

The judgment is affirmed.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

## **CERTIFICATION**

I, Lise Breakey, certify that, based upon the word count of the computer program used to prepare this document, there are 6,124 words in this petition, excluding the tables and the case caption.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct. Executed at San Diego, California.

Dated: July 21, 2007.

_Lise Breakey_

Lise Breakey.

## DECLARATION OF SERVICE

I, Lise M. Breakey, say: I am over 18 years of age, employed in the County of San Diego, California, in which county the within-mentioned delivery occurred, and not a party to the subject cause. My business address is 5750 Amaya Drive, Unit Eight, La Mesa, California, 91942. I served the Petition for Review, of which a true and correct copy of the document filed in the cause is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Fourth District Court of Appeal, Division Three, 925 N. Spurgeon Street, PO Box 22055, Santa Ana, CA 92702.

Christine Bergman, DAG, 110 West A Street, Suite 1100, PO Box 85266, San Diego, CA 92186-5266.

Appellate Defenders, Inc., 555 West Beech Street, Suite 300; San Diego, CA 92101.

Clerk of the Superior Court, for delivery to Hon. William R. Froeberg, Central Justice Center, 700 Civic Center Drive West , Santa Ana, CA 92701.

Michael Pear, Office of the District Attorney, 700 Civic Center Drive, Santa Ana, CA 92701

Tuan Phuong Nguyen, F20604, D5 C-250 Low, PO Box 931, Imperial, CA 92251

Each envelope was then sealed and with the postage thereon fully prepaid deposited in the United States mail by me at La Mesa, California, on July 23, 2007.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on July 23, 2007, at La Mesa, California.

*Lise Breakey*

Lise M. Breakey.

JS44
(Rev. 07/89)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**

**CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY**

I (a) PLAINTIFFS

**Tuan Phuong Nguyen**

VM Almager

(b) COUNTY OF RESIDENCE OF FIRST LISTED  **Imperial**
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**Tuan Phuong Nguyen
PO Box 901
Imperial, CA 92251
F-20604**

ATTORNEYS (IF KNOWN)

**'07 CV 2213 L    RBB**

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.

**28 U.S.C. 2254**

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

(nature of suit checkboxes; 530 General checked under PRISONER PETITIONS)

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT:  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    JURY DEMAND: ☐ YES ☐ NO

VIII. RELATED CASE(S) IF ANY (See Instructions):  JUDGE            Docket Number

DATE  11/19/2007    SIGNATURE OF ATTORNEY OF RECORD